UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

DENISE COLON,

                         Plaintiff,

             v.

CITY OF NEW YORK,

                       Defendant.

------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: February 6, 2018

16 Civ. 6425 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

Plaintiff Denise Colon, proceeding *pro se*, brings this action against Defendant City of New York pursuant to 42 U.S.C. §§ 1981 and 1983, as well as the New York State Human Rights Law, New York Executive Law §§ 290 to 297 (the "NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code §§ 8-101 to 8-131 (the "NYCHRL"). Plaintiff was a corrections officer at the Department of Corrections (the "DOC") from 2005 until her termination in 2014 following a criminal prosecution and disciplinary proceedings for, among other things, underreporting income to receive federal rent subsidies. Plaintiff's chief complaint is that she, who is Hispanic, was treated differently than a similarly situated corrections officer who was African-American. Defendant now moves to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff has failed to state a claim under 42 U.S.C. §§ 1981 and 1983 and encouraging the Court to decline supplemental jurisdiction over Plaintiff's pendent state and local claims. As set

forth in the remainder of this Opinion, the Court agrees with Defendant and grants the motion in its entirety.

## BACKGROUND[1]

### A.     Factual Background

Plaintiff, who is Hispanic, began working as a corrections officer on November 5, 2005. (Am. Compl. ¶¶ 2, 12). On January 12, 2012, Plaintiff was arrested for "grand larceny and allegedly providing false documentation to receive rent subsidies"; she was suspended indefinitely from her job at DOC pending the resolution of her criminal proceedings. (*Id.* at ¶¶ 5, 8). Ultimately, Plaintiff pleaded guilty to disorderly conduct and was ordered to pay $19,000 in restitution; this figure remains unpaid, and Plaintiff asserts that she has "not yet been given information as to who to pay the money to." (*Id.* at ¶ 5). Plaintiff's criminal case concluded in March 2013, and she was reinstated to her job as a corrections officer. (*Id.* at ¶ 9).

After her reinstatement, DOC initiated disciplinary proceedings against Plaintiff. (Am. Compl. ¶ 13). These proceedings concerned several violations of DOC's rules and regulations: *First*, DOC alleged that Plaintiff engaged in conduct unbecoming an officer when she "tendered fraudulent documents

---

[1]     This Opinion draws facts principally from Plaintiff's Amended Complaint ("Am. Compl." (Dkt. #23)), and addresses later in the text its ability to consider documents appended to Plaintiff's moving papers. For ease of reference, the Court will refer to Defendant's supporting brief as "Def. Br." (Dkt. #29), to Plaintiff's opposition brief as "Pl. Opp." (Dkt. #38), and to Defendant's reply brief as "Def. Reply" (Dkt. #39). To the extent that a party's submission lacks page numbers, the Court will use those provided by the Court's electronic case filing system.

bearing her signature" that reflected a level of income that would qualify her for benefits from the United States Department of Housing and Urban Development ("HUD"). (Pl. Opp., Ex. B at 3). This is the precise conduct for which Plaintiff was criminally prosecuted. (*Id.*). *Second*, DOC alleged that Plaintiff engaged in further conduct unbecoming an officer by "establish[ing] residency in New Jersey for the purposes of engaging in outside employment … without permission or authority." (*Id.*). *Third*, DOC alleged that Plaintiff "failed, as required, to follow [DOC] procedures to request permission … to engage in outside employment." (*Id.*).

Plaintiff was ordered to appear at the Office of Administrative Trials and Hearings ("OATH"). In "late 2013," Plaintiff attempted to "negotiate a resolution" with the assistance of her union-appointed attorney, but she was "only offered two options: resign or go to trial." (Am. Compl. ¶¶ 13, 15-16). At the subsequent trial before OATH, "it was determined that [Plaintiff] had underreported income." (*Id.* at ¶ 19). Plaintiff was terminated in 2014. (*Id.* at ¶¶ 3, 20).

Plaintiff alleges that in the period leading up to her negotiations with OATH, she was "subject to a series of disciplinary proceedings" — specifically, she was "served with a supervisor's complaint report by Captain Kirkland, a command discipline by Deputy Augustus[,] and a corrective interview by Captain Bramwell." (Am. Compl. ¶¶ 21-22). Plaintiff alleges that "some" of these disciplinary actions were for "lateness, even though [she] arrived at the

same time as other correction officers, who were African American, and who were not disciplined for lateness." (*Id.* at ¶ 23).

In support of her discrimination claim, Plaintiff proffers as a comparator a corrections officer she identifies as Shelby Irby, who "was also arrested for alleged under-reporting and receiving subsidies for which she was not qualified"; Irby also pleaded guilty to disorderly conduct and was ordered to pay $29,000 in restitution. (Am. Compl. ¶ 7). Irby was also suspended from her job pending the outcome of her criminal proceedings, and she was reinstated in June 2012 after she paid restitution. (*Id.* at ¶ 10). And like Plaintiff, Irby was also placed into disciplinary proceedings upon her return. (*Id.* at ¶ 11).

In Plaintiff's recounting of events, this is where the fates of the two officers diverge: Both she and Irby were referred to OATH, but Irby was able to negotiate a punishment of "time served with forfeiture of salary [and] no probation. She did not have to go to trial [and] remains employed by DOC to this date." (Am. Compl. ¶ 17). Plaintiff claims that "[t]he only difference in [their] situation[s] is that [Plaintiff is] Hispanic and [ ] Irby is African American." (*Id.* at ¶ 12). Plaintiff further alleges that DOC underwent an "administrative change" during the pendency of her criminal proceedings, after which "all supervisors … were African American." (*Id.* at ¶ 14). Specifically, Plaintiff alleges that Deanna Logan (Director of Trials and Litigation for DOC),[2] Clayton

---

[2]     Plaintiff refers to "Deann Logan" but a review of the documents submitted with Plaintiff's opposition brief indicates that Ms. Logan's first name is Deanna. (Pl. Opp., Ex. B).

Augustus (Deputy Warden of Administration), and Nashawn Kirkland (Personnel Captain) are all African-American. (*Id.*).

**B.    Procedural History**

Plaintiff filed the initial complaint in this action on August 12, 2016, and alleged a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. (Dkt. #2). On December 15, 2016, Defendant informed the Court that it wished to filed a motion to dismiss the complaint, and the Court held a pre-motion conference with the parties on December 20, 2016, at which the Court set a briefing schedule for Defendant's motion. (Dkt. #13, 16).

Defendant filed its first motion to dismiss on January 26, 2017, and argued that Plaintiff's Title VII claim was time-barred. (Dkt. #17). After receiving a one-month extension of her time to respond, Plaintiff filed the Amended Complaint instead of an opposition brief. (Dkt. #23). Plaintiff's Amended Complaint abandoned her Title VII claim and, instead, raised claims under 42 U.S.C. §§ 1981 and 1983, the NYSHRL, and the NYCHRL. (Am. Compl.). The Court terminated Defendant's first motion to dismiss and granted Defendant's request for an extension of time to respond to the Amended Complaint. (Dkt. #27).

Defendant filed a second motion to dismiss on June 5, 2017, this time arguing that Plaintiff had not established municipal liability under *Monell* v. *Department of Social Services*, 436 U.S. 658 (1978), because she had not shown that the alleged discrimination was carried out pursuant to a municipal policy or that it was committed by individuals with policy-making authority. (Dkt.

#28). In response, Plaintiff sought to amend her pleadings a second time "to include senior policy making officials," specifically, "Deann[a] Logan[,] Commissioner of Trials and Litigation, Deputy of Administration Clayton Augustus, and Captain Nashawn Kirkland[,] [Personnel] Captain." (Dkt. #33). Plaintiff did not contend that any of these individuals had implemented or allowed to stand a discriminatory policy, but rather noted that these individuals "have the authority to change and adjust policy [within] the [DOC] by the power granted to them." (*Id.*). As Plaintiff acknowledged in her request to amend her complaint, Logan, Augustus, and Kirkland were all mentioned in her Amended Complaint, and her request did not make clear what further non-conclusory allegations she would add to explain their policy-making authority or their personal involvement in her termination. (*Id.*; *see also* Am. Compl. ¶¶ 13-14). Moreover, Plaintiff offered no information about why she waited until such a late date to seek leave to amend her claims further, leaving the Court concerned that Plaintiff's proposed amendment was another attempt to evade motion practice.

By Order dated August 15, 2017, the Court denied Plaintiff's application. (Dkt. #34). Following the Court's August 15, 2017 Order, Plaintiff filed her opposition to Defendant's second motion on September 15, 2017. (Dkt. #38). Plaintiff's opposition contained several additional allegations about Logan, Kirkland, and Augustus and, for the reasons explained below, the Court will consider these allegations. Defendant filed a reply in support of its motion on September 20, 2017. (Dkt. #39).

**DISCUSSION**

**A.    Applicable Law**

**1.    Motions to Dismiss Under Rule 12(b)(6)**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  A complaint is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *N.J. Carpenters Health Fund* v. *Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 120 (2d Cir. 2013).  But while Plaintiff must demonstrate the plausibility of her claims, she need not show that a judgment in her favor is probable.  *Iqbal*, 556 U.S. at 678.  Moreover, the Court is obligated to construe the submissions of a *pro se* litigant like Plaintiff liberally "to raise the strongest arguments they suggest." *Triestman* v. *Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon* v. *Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).

**2.    Documents the Court May Consider in Resolving a Motion Under Rule 12(b)(6)**

On a motion to dismiss, a court may consider the allegations on the face of the complaint and any documents "attached to it as an exhibit or any statements or documents incorporated in it by reference." *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (internal quotation marks and citation omitted).  A court's review is so limited because of

7

harm to the plaintiff that could be occasioned when a court bases its conclusion on documents of which the plaintiff did not have notice. *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Generally speaking, when presented with materials outside the pleadings in counseled cases, a court must either exclude the materials from its review or convert the motion to one for summary judgment under Rule 56 and give the parties an opportunity to conduct discovery and to present additional materials for the court's consideration. *Id.* at 154.

Court treatment of materials outside the pleadings in *pro se* cases is somewhat different: District courts are admonished — reflecting the special solicitude afforded *pro se* parties — to consider factual allegations raised in a *pro se* plaintiff's papers opposing a motion to dismiss, including documents appended to the moving papers in support of those allegations. *See, e.g.,* *Walker* v. *Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."); *Gill* v. *Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) (upholding district court's consideration of an affidavit filed by a *pro se* plaintiff in opposition to a motion to dismiss); *Washington* v. *James*, 782 F.2d 1134, 1138-39 (2d Cir. 1986) ("[B]ecause Washington was *pro se* ... the court, when ruling on a Rule 12 motion, should have given Washington the benefit of the doubt, giving consideration to the affidavit and treating the complaint as if it had been amended."); *see generally Reeves* v. *City of Yonkers*, No. 16 Civ. 2223 (KMK), 2017 WL 2275025, at *5 (S.D.N.Y. May 24, 2017)

(discussing propriety of considering documents appended to motion papers of *pro se* litigants (citing *Agu* v. *Rhea*, No. 09 Civ. 4732 (JS), 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010))). Given the liberality with which a court views a *pro se* plaintiff's attempts to substantiate her claims, the Court does not believe its consideration of these materials, submitted by Plaintiff herself, to be in derogation of the general rule not to consider materials outside the pleadings.

As the Court noted above, Plaintiff requested to amend her pleadings a second time and that request was denied. Undeterred, Plaintiff submitted a memorandum in opposition to Defendant's motion to dismiss that raised several new allegations about her supervisors at DOC and attached a series of documents that she cited to lend further support to her allegations. To her opposition brief, Plaintiff attached: (i) an Equal Employment Opportunity Commission Intake Questionnaire; (ii) a Closing Memorandum for the disciplinary proceeding of Corrections Officer Shaquana Irby;[3] (iii) Charges and Specifications from Plaintiff's DOC disciplinary proceeding; and (iv) several equal employment and anti-harassment policies from DOC. (Pl. Opp., Ex. A-C).

Because courts are permitted to consider submissions made by a *pro se* party in response to a motion to dismiss, and because the concern about harm to the plaintiff is considerably less "where plaintiff has actual notice of all the information" outside the pleadings "and has relied upon these documents in framing the complaint," the Court will not convert Defendant's motion to one

---

[3] The Court assumes this is the same individual whom Plaintiff identifies as Shelby Irby.

for summary judgment, *Chambers*, 282 F.3d at 153 (internal quotation marks and citation omitted), but will look to Plaintiff's opposition brief and the documents attached thereto when assessing the sufficiency of Plaintiff's claims.

**B.    Discussion**

**1.    Plaintiff Has Failed to State a Claim Under 42 U.S.C. §§ 1981 or 1983**

**a.    The Interplay Between Sections 1981 and 1983 and Title VII**

Plaintiff brings claims under 42 U.S.C. §§ 1981 and 1983.  Section 1981 proscribes discrimination in the "enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment."  *Patterson* v. *Cty. of Oneida, N.Y.*, 375 F.3d 206, 224 (2d Cir. 2004); 42 U.S.C. § 1981. Section 1983 affords no substantive rights on its own and simply provides a remedy for a deprivation of federal statutory or constitutional rights, such as those codified at § 1981.  *City of Okla. City* v. *Tuttle*, 471 U.S. 808, 816 (1985); *Patterson*, 375 F.3d at 225.  "To state a claim under § 1983, a plaintiff must allege two elements: [i] the violation of a right secured by the Constitution and laws of the United States; and [ii] the alleged deprivation was committed by a person acting under color of state law."  *Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87-88 (2d Cir. 2015) (internal quotation marks omitted).

In the employment context, claims raised under §§ 1981 and 1983 are analyzed under the familiar *McDonnell Douglas* burden-shifting framework applied to Title VII claims.  *Brown* v. *City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012); *Ruiz* v. *Cty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010);

*McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802-03 (1973).[4]  To state a

claim under Title VII sufficient to survive a motion to dismiss, a plaintiff need

not prove the ultimate question of whether a defendant's actions were

discriminatory; rather, a plaintiff must "give plausible support to a minimal

inference of discriminatory motivation."  *Littlejohn* v. *City of N.Y.*, 795 F.3d 297,

311 (2d Cir. 2015); *accord Vega*, 801 F.3d at 84.  Plaintiff must allege "[i] the

employer took adverse action against [her] and [ii] [her] race, color, religion,

sex, or national origin was a motivating factor in the employment decision."

*Vega*, 801 F.3d at 86.  Plaintiff "may do so by alleging facts that directly show

discrimination or facts that indirectly show discrimination by giving rise to a

plausible inference of discrimination."  *Vega*, 801 F.3d at 86.

　　　But Plaintiff's claim is not a garden-variety Title VII case.  *See Patterson*,

375 F.3d at 225 ("A § 1983 action may not, however, be brought to vindicate

rights conferred only by a statute that contains its own structure for private

enforcement, such as Title VII.").  The Second Circuit has carefully explained

two important differences between employment discrimination claims brought

under §§ 1981 and 1983 and those brought under Title VII:  *First*, when claims

---

[4]　　Plaintiff originally brought this case under Title VII.  (Dkt. #2).  After Defendant filed a
motion to dismiss her claim as time-barred, Plaintiff abandoned her Title VII claim and,
instead, brought claims under Sections 1981 and 1983.  (Dkt. #23).  The Second Circuit
has acknowledged the propriety of allowing employment discrimination claims to
proceed under §§ 1981 and 1983 where they would have been untimely under Title VII,
*Patterson* v. *Cty. of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004), but has noted that a
plaintiff may not bring suit under § 1983 to gain an advantage that she would not enjoy
under Title VII, *id.* at 225; *Saulpaugh* v. *Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir.
1993).  The Court mentions this not to intimate that Plaintiff endeavors such a ruse but
rather to preview its refusal to treat Plaintiff's §§ 1981 and 1983 employment
discrimination claims as mere proxies for her untimely Title VII claim.

under §§ 1981 and 1983 are raised against a municipality — as they are here — "the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." *Id.* at 226. *Second*, claims under §§ 1981 and 1983 require a showing of discriminatory *intent*, whereas a Title VII claim can be sustained on mere negligence. *Id.* Thus, even if the Court could find a minimal inference of discrimination, which it cannot, Plaintiff's pleadings would also need to establish a municipal policy and indicia of discriminatory intent. While the Court is "mindful of the 'elusive' nature of intentional discrimination," *Vega*, 801 F.3d at 86 (citing *Texas Dep't of Cmty. Affairs* v. *Burdine*, 450 U.S. 248, 255 n.8 (1981)); *Gorzynski* v. *JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010), it concludes that the Amended Complaint falls short of this standard.

### b. Plaintiff Cannot Allege an Inference of Discrimination

The Court pauses to note that neither party addressed the interplay between Title VII and §§ 1981 and 1983 or the standard that applies to Plaintiff's claim. Defendant's motion to dismiss contains five pages of substantive legal arguments, none of which addresses the merits of Plaintiff's §§ 1981 and 1983 allegations, save to say in conclusory fashion that her complaint fails. (Def. Br. 9). Instead, Defendant rests its entire motion on Plaintiff's purported failure to state a claim under *Monell* (Def. Br. 8-10); the Court will address Defendant's arguments when it considers this element of Plaintiff's claim. Plaintiff's opposition brief will, of course, be read to raise the strongest arguments her submissions can support.

12

There does not appear to be any dispute that Plaintiff suffered an adverse employment action when she was terminated. It is not clear, however, from the face of the Amended Complaint that the allegations give rise to an inference that this adverse action was occasioned in part by a discriminatory reason — even accounting for Plaintiff's low burden. *See Vega*, 801 F.3d at 87 ("At the pleadings stage ... a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason[.]"). Plaintiff is Hispanic; she alleges that during the pendency of her criminal proceedings in state court, DOC "went through an administrative change" after which a number of African-American individuals took on supervisory roles. (Am. Compl. ¶ 14). Plaintiff names three such individuals: Deanna Logan, Commissioner of Trials and Litigation; Clayton Augustus, Deputy Warden of Administration; and Nashawn Kirkland, Personnel Captain. (*Id.* at ¶¶ 13-14). Plaintiff alleges that she was terminated while an African-American employee who pleaded guilty to similar misconduct was allowed to keep her job, and that she was disciplined for lateness even though she arrived at work at the same time as African-American corrections officers. (*Id.* at ¶¶ 12-23).

To be sure, an inference of discrimination can be based on allegations of "more favorable treatment of employees not in the protected group." *Littlejohn*, 795 F.3d at 312; *Norville* v. *Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999) ("A plaintiff may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably."). But "adverse actions taken against employees who are not

similarly situated cannot establish an inference of discrimination. *Littlejohn*, 795 F.3d at 312 (citing *Mandell* v. *Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)). Plaintiff must show that she is similarly situated to a comparator in all material respects. *Mandell*, 316 F.3d at 379.

The Court notes, first, that Plaintiff's pleading does not meet this burden for her claim that she was impermissibly reprimanded for lateness while African American corrections officers were not. (Am. Compl. ¶ 23). Plaintiff offers no information about who these employees are, whether they were subject to the same schedules or regulations that she was, or any other indication that they are similarly situated to her. *See Wegmann* v. *Young Adult Inst., Inc.*, No. 15 Civ. 3815 (KPF), 2016 WL 827780, at *10 (S.D.N.Y. Mar. 2, 2016) (holding that plaintiff was not similarly situated to comparators where she did not plead facts about the position, responsibilities, tenure, or experience of the comparators).

Plaintiff's claim of disparate treatment compared to Ms. Irby presents a somewhat closer question. The Amended Complaint indicates that Irby was also a corrections officer at DOC, was also prosecuted for underreporting income and receiving rent subsidies, and also pleaded guilty. (Am. Compl. ¶ 7). Plaintiff expounds upon this in her opposition brief by recounting the similarities between the criminal charges brought against her and Irby, and argues that Irby obtained a more favorable outcome from Deanna Logan at DOC during her disciplinary proceedings. (Pl. Opp. 3-4).

It is here that Plaintiff relies on documents appended to her opposition brief: To corroborate her arguments, Plaintiff points the Court to the Closing Memorandum for Irby's disciplinary proceedings and the Charges and Specifications from her own disciplinary action. (Pl. Opp. 3; *id.* at Ex. B).[5] In point of fact, these documents undermine Plaintiff's claim. The Closing Memorandum shows that Irby received HUD rent subsidies to which she was not entitled. (Pl. Opp., Ex. B at 1). Irby had lived with her mother in an apartment subsidized under Section 8 of the Housing Act of 1937, 42 U.S.C. § 1437f; when her mother moved, Irby's landlord advised her that she could remain in the apartment even though her mother had been the Section 8 beneficiary. (*Id.*). In reliance on this representation, Irby continued to pay the discounted rate but she was ultimately discovered by the HUD Office of the Inspector General. (*Id.* at 1-2).

Plaintiff, on the other hand, was alleged by DOC to have underreported her income to HUD and to have established residence in New Jersey while continuing to collect a rent subsidy in New York City. (Pl. Opp., Ex. B at 3). In addition, Plaintiff was alleged to have violated DOC policy by engaging in outside employment at the clothing retailer Ann Taylor in Linden, New Jersey without permission. (*Id.*). And the Amended Complaint suggests a further important difference between Plaintiff and Irby: Both were ordered to pay

---

[5]     Plaintiff appears to have inadvertently reversed her citations to Exhibits B and C of her opposition brief. On page 2, she cites to Exhibit B but the reference plainly derives from a document appended as Exhibit C, and on page 3, she cites to Exhibit C but refers to the documents located at Exhibit B. The Court will cite to the documents in the order in which they have been attached to Plaintiff's brief.

restitution; Irby paid her restitution and was reinstated by DOC after she did so, whereas Plaintiff still has not paid the restitution she owes. (Am. Compl. ¶¶ 5-7, 10). Plaintiff alleges that she has not been given instructions on how to pay the restitution but, even assuming this is true, it appears that Plaintiff is nonetheless materially distinguishable from Irby on this basis. Given these records, the Court cannot find that Plaintiff adequately pleaded (or can adequately plead) that she and Irby are comparators. Once Plaintiff pointed to documents showing that she and Irby were treated differently because of the differences in their conduct, she undermined any plausible inference — even a minimal one — of discrimination. The most plausible inference from Plaintiff's pleading and opposition papers is that she was terminated for her more serious conduct.

But even assuming, *arguendo*, that Plaintiff is sufficiently similar to Irby to sustain an inference of discrimination, her claims under §§ 1981 and 1983 still fail for the additional reason that she has not pleaded any facts that suggest, even on a liberal reading of the Amended Complaint, that her termination was the result of a municipal policy or custom as required under *Monell*. (*See* Def. Br. 9-10). To discharge this burden, Plaintiff "need not identify an express rule or regulation," but she must demonstrate that "a discriminatory practice of municipal officials was so 'persistent or widespread' as to constitute 'a custom or usage with the force of law.'" *Patterson*, 375 F.3d at 226 (quoting *Sorlucco* v. *N.Y. City Police Dep't*, 971 F.2d 864, 870-71 (2d Cir. 1992)). The Amended Complaint falls far short of this standard. Plaintiff has

not alleged the existence of any sort of policy, nor does she claim that Defendant's alleged favoritism of African American employees over Hispanic employees was so commonplace as to suggest the existence of a practice or policy.

The Court is mindful that "a single unlawful discharge, if ordered by a person whose edicts or acts may fairly be said to represent official policy, can, by itself, support a claim against a municipality." *Back* v. *Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 128 (2d Cir. 2004) (internal quotation marks and citation omitted). The Court will assume that Logan, Augustus, and Kirkland are policymakers at DOC. Even so, nothing in Plaintiff's Amended Complaint or the additional allegations raised in her opposition brief suggests that Logan, Augustus, or Kirkland acted in a way that represents official policy. The Amended Complaint does not explain how Logan was involved in Plaintiff's termination beyond presiding over the department that conducts disciplinary proceedings. Even more problematic, the Amended Complaint does not allege any involvement at all by Augustus or Kirkland in Plaintiff's termination. Plaintiff's opposition brief attempts, unsuccessfully, to remedy this deficiency. Plaintiff states that Logan approved the charges against Plaintiff and that Kirkland ignored Plaintiff's statements that she was "concern[ed]" about "the treatment [she] was receiving." (Pl. Opp. 2). These allegations do little to explain how these individuals were involved in the decision to terminate Plaintiff. Plaintiff's claims fail on this basis as well. *See Littlejohn*, 795 F.3d at

315 (demotion not actionable against city under Title VII, § 1981, or § 1983 where the plaintiff could not establish municipal liability).

An examination of the documents Plaintiff provided with her opposition brief does not alter the Court's analysis.  Plaintiff argues that "these acts against [her] were witness[ed] by employees whose names were provided to EEOC to affirm the claims made which I am providing here[:] Correction Officer Martiza Carrion and Correction Officer Luis Angel Nieves." (Pl. Opp. 2).  In the intake form Plaintiff provided to the EEOC, and which is appended to her brief, Plaintiff offers Carrion and Nieves as "witnesses to the alleged discriminatory incidents" and proffers that they would corroborate "the different[] treatment of CO Irby, situation which was similar to the one [Plaintiff] was found in." (Pl. Opp., Ex. A).  Notably, however, Plaintiff does not claim that these individuals were also subject to an improper municipal policy or practice, nor does she allege that they would speak to the existence of one.

Plaintiff also points the Court to several DOC policy statements on equal employment opportunity.  (Pl. Opp., Ex. C).  These documents set forth DOC's policies for handling claims of harassment and discrimination.  (*Id.*)  None indicates that the discrimination Plaintiff alleges was, itself, part of a municipal policy.  To the extent that Plaintiff complains that certain reports were not prepared or bulletins were not posted by DOC in compliance with these equal employment policies, those violations are not cognizable under the claims Plaintiff has brought.  Plaintiff's claims — both as alleged in the Amended Complaint and explained in her opposition brief — are concerned with what

happened to her and do not indicate more widespread discrimination. Plaintiff cannot state a claim under §§ 1981 and 1983.

### 2. Plaintiff Cannot State a Claim Under a Theory of Selective Enforcement

#### a. The Law of Selective Enforcement

The Court liberally construes Plaintiff's Amended Complaint to raise all claims it plausibly suggests to prevent the "inadvertent forfeiture of important rights." *Abbas* v. *Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 157 (2d Cir. 2017). Though the Amended Complaint does not use the words "selective enforcement," Plaintiff is clear that she believes she was treated worse than Shelby Irby, whose "situation[ was] very similar." (Am. Compl. ¶ 12). She offers specific facts about Irby, and she explains why she believes they were similarly situated and how they were differently treated. (*Id.* at ¶¶ 7, 10-12, 17). In her opposition brief, Plaintiff argues that she, "a person … similarly situated as Correction Officer Shelby Irby, was selectively treated[,] and the treatment was motivated by an intention to discriminate by impermissible considerations[] fueled by my race." (Pl. Opp. 2).[6] Taken together, Plaintiff's allegations in the Amended Complaint and arguments in opposition to Defendant's motion suggest that Plaintiff raises a claim for selective enforcement in violation of the Equal Protection Clause of the Fourteenth Amendment. Accordingly, the Court will

---

[6] As noted above, the Court may consider the allegations made in Plaintiff's opposition brief. *Walker* v. *Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." (citing *Gill* v. *Mooney*, 824 F.2d 192, 195 (2d Cir. 1987))).

consider whether Plaintiff's Amended Complaint pleaded these allegations sufficiently to survive Defendant's motion to dismiss.

To sustain a claim for selective enforcement, Plaintiff must establish "[i] that [she was] treated differently from other similarly situated individuals, and [ii] that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious bad faith or intent to injure a person." *Telian* v. *Town of Delhi*, — F. App'x —, No. 17-0410, 2018 WL 416794, at *2 (2d Cir. Jan. 16, 2018) (summary order). As with her §§ 1981 and 1983 employment discrimination claim, Plaintiff must show here that she is similarly situated to Irby.

The Second Circuit has not settled on the quantum of similarity a plaintiff must show in the selective enforcement context. *See generally Artec Constr. & Dev. Corp.* v. *City of N.Y.*, No. 15 Civ. 9494 (KPF), 2017 WL 5891817, at *11 (S.D.N.Y. Nov. 28, 2017). Some courts have imported the standard applied in "class of one" claims and have demanded an "extremely high" level of similarity. *E.g.*, *Dones* v. *City of N.Y.*, No. 07 Civ. 3085 (SAS), 2008 WL 2742108, at *7 (S.D.N.Y. July 9, 2008). Others have required plaintiffs to show they are similarly situated to a comparator "in all material respects." *E.g. Vassallo* v. *Lando*, 591 F. Supp. 2d 172, 184 (E.D.N.Y. 2008). Regardless of the standard applied, the Court is mindful that the question of whether a plaintiff is similarly situated to a comparator "is a factual issue" that is typically best put to a jury. *Harlen Assocs.* v. *Incorporated Vill. of Mineola*, 273

F.3d 494, 499 n.2 (2d Cir. 2001). But this rule is not absolute, and what matters at the motion to dismiss stage is whether "it is plausible that a jury could ultimately determine that the comparators are similarly situated." *Panzella* v. *City of Newburgh*, 231 F. Supp. 3d 1, 8 (S.D.N.Y. 2017).

### b.    Plaintiff Cannot State a Claim

The Amended Complaint does not plead sufficient facts to show that Plaintiff is similarly situated to Irby. Both were corrections officers, both were prosecuted for underreporting their income and receiving benefits to which they were not entitled, and both were suspended pending the outcome of their prosecutions. (Am. Compl. ¶¶ 7, 10-12, 17). But as the Court explained above, Plaintiff recounts only the similarities between herself and Irby while eliding critical differences. The very documents that Plaintiff cites in her opposition brief to support her claim show why she and Irby are not comparators and, ultimately, why they were treated differently by DOC. The Court need not reiterate that analysis here. Even assuming Plaintiff and Irby were similarly situated, there is little in the Amended Complaint to show that Plaintiff was selectively treated because of "impermissible considerations ... or malicious or bad faith or intent to injure a person." *Telian*, 2018 WL 416794, at *2. And, again, the documents appended to Plaintiff's brief belie this allegation.[7]

---

[7]    Even if the Court did not consider the documents appended to Plaintiff's opposition brief, her selective enforcement claim would still fail. To recover against Defendant City of New York for a selective enforcement constitutional violation as alleged under § 1983, Plaintiff would need to show that Defendant acted pursuant to a municipal policy or practice. *See Williams* v. *City of New Rochelle*, No. 13 Civ. 3315 (NSR), 2017 WL

### 3.  The Court Declines Supplemental Jurisdiction over Plaintiff's State and Local Claims

Having found that Plaintiff has not pleaded plausible violations of §§ 1981 and 1983, the Court declines to exercise supplemental jurisdiction over Plaintiff's claims raised under the NYSHRL and NYCHRL.  28 U.S.C. § 1367(c)(3) affords a district court the discretion to "decline to exercise supplemental jurisdiction over" non-federal claims if it "has dismissed all claims over which it has original jurisdiction."  In deciding whether to exercise supplemental jurisdiction, a court balances "the traditional values of [i] judicial economy, [ii] convenience, [iii] fairness, and [iv] comity."  *Kolari* v. *N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ.* v. *Cohill*, 484 U.S. 343, 350 (1988)).  The Second Circuit counsels in favor of dismissing state-law claims in this setting.  *Jordan* v. *Chase Manhattan Bank*, 91 F. Supp. 3d 491, 511 (S.D.N.Y. 2015) (quoting *In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998)).

Here, all factors favor declining jurisdiction over Plaintiff's NYSHRL and NYCHRL claims.  First, this case is still in the early pleading stages and thus judicial economy is best served by dismissing the state and local claims.  *See Chenensky* v. *N.Y. Life Ins. Co.*, 942 F. Supp. 2d 388, 392 (S.D.N.Y. 2013).  Second, refiling these claims in state court is but a minor inconvenience at this early stage, and third, the parties will not be prejudiced or placed at any disadvantage in state court.  Finally, because only state and local law issues

---

6335904, at *13 (S.D.N.Y. Dec. 7, 2017).  For the reasons given above, Plaintiff has not met that burden.

remain, comity counsels in favor of Plaintiff proceeding in state court.  *See LLM Bar Exam, LLC* v. *Barbri, Inc.*, No. 16 Civ. 3770 (KPF), 2017 WL 4280952, at *30 (S.D.N.Y. Sept. 25, 2017).

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. Plaintiff's claims under 42 U.S.C. §§ 1981 and 1983 are dismissed with prejudice, and her claims under the NYSHRL and the NYCHRL are dismissed without prejudice.  The Clerk of Court is directed to terminate all motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      February 6, 2018
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*A copy of this Order was mailed by Chambers to:*

Denise Colon
50 Chadwick Ave.
Apt. 2
Newark, NJ 07108